## MINING COMPANY *v.* TAYLOR.

1. In ejectment for an undivided interest in a mining claim in Nevada, where both parties derive title from the original owner, the validity and regularity of his location are not in question.
2. Where the plaintiff was a tenant in common with the defendants, their possession of the claim was his possession until he was ousted. The Statute of Limitations would then run against him, but not bar his recovery, unless, after such ouster, their adverse possession was maintained two years before the commencement of the suit.
3. The Statute of Limitations of that State, as construed by its Supreme Court, excepts from its protection a foreign corporation.
4. Where the Circuit Court, under a written stipulation of the parties, tries the issue, its special finding should set forth the ultimate facts, and not the evidence establishing them. Where, therefore, both parties claimed under A., and the court found his ownership, the chain of conveyances by which he acquired it need not be set forth.
5. A conveyance in writing is not necessary to the valid transfer of a mining claim.
6. The admission of immaterial and irrelevant evidence, which it is manifest could not have affected injuriously the case of the plaintiff in error, does not entitle him to a reversal of the judgment.

ERROR to the Circuit Court of the United States for the District of Nevada.

This was an action of ejectment brought Dec. 23, 1874, by James D. Taylor against The Union Consolidated Silver Mining Company, to recover the possession of an undivided interest, equal to five feet, of a mining claim and lode, part of the Comstock lode, situate in the Virginia Mining District, in Storey County, State of Nevada. Under an agreement of the parties the case was, without a jury, tried by the court, which found as facts that the parties were tenants in common of the mining claim known as the Union claim, for an undivided interest in which the suit was brought; that they claimed and derived title from the same source, namely, Payne and Cook, the original locators of the claim; that one Solomon Wood, on the eleventh day of October, 1862, was the owner of at least an undivided fifty feet of the claim, having derived his title thereto regularly from the original locators, and that on that day he sold and conveyed by deed to the plaintiff an undivided five feet of the claim, describing it as " five undivided feet interest in the claims of the Union Company, located upon the

Comstock silver lode; said claims consist of three hundred feet, bounded north by the claims of the Sierra Nevada Silver Mining Company, and on the south by the claims of the Ophir Silver Mining Company;" that during the years 1860, 1861, 1862, 1863, and 1864, the original locators of the Union claim, and others deriving title from them, including Wood, the immediate grantor of the plaintiff, and the plaintiff himself, expended over $30,000 in prospecting and developing the claim, though the plaintiff personally had done no work upon it since 1863, nor had any been done for him, except so far as the work done by his co-tenants can be considered work done for him; that after the plaintiff's title had been acquired, namely, on the thirtieth day of September, 1863, C. H. Reynolds and others, all of whom had derived title from the original locators of the mining claim, sold and conveyed all their interests therein to a California corporation, styled the Union Gold and Silver Mining Company; and that, on the twenty-seventh day of May, 1874, that company sold and conveyed all its interest in the Union claim to the defendant, a California corporation, organized in and under the laws of that State.

The court further found that the defendant and its grantors had been in possession of the ground in controversy during more than two years before the commencement of this action, and were in possession when the suit was brought, and had been for more than five months before that time in possession of the Union claim, which extends on the Comstock lode a distance of three hundred feet, including the ground in dispute, and that the plaintiff had made no demand to be let into possession of the premises before commencing his action, but that the defendant was in the exclusive adverse possession before that time, and had in fact ousted the plaintiff from the possession.

In the course of the trial the company excepted to the admission of exhibits "A" and "C," and certain mining rules and regulations. Judgment was rendered for the plaintiff. The company thereupon sued out this writ, and assigns for error that the court below erred: 1st, In admitting as evidence said exhibits and said rules; 2d, in ruling that the plaintiff

was entitled to recover; 3d, in giving judgment upon the facts found for five instead of two and a half feet; 4th, in giving judgment for the plaintiff, when the finding, which is special, and should therefore contain every fact essential to a recovery, does not show such facts of conveyance, possession, &c., as result necessarily in the legal conclusion that the plaintiff was entitled to the property sued for.

*Exhibit A.*

" COOK & PAYNE to A. KENNEDY & CO.

"VIRGINIA CITY, Sept. 20, 1859.

" This is to certify that we, D. B. Cook, J. Cook, and E. Payne, have this day sold, bargained, and conveyed all our rights to and interest in a certain set of mining claims to A. Kennedy & Co., said claims being situated as follows : lying and being in the Virginia district north of the Comstock claims and situated on the Comstock and Penrod vein, for and in consideration of which A. Kennedy & Co. agree to prospect the same thoroughly, and when pay dirt is struck, then Cook, Payne, & Co. agree to pay one-half of the expense and come in equal partners to the same, Kennedy & Co. receiving one undivided half of six hundred feet.

" D. B. COOK.
" JAMES COOK.
" E. PAYNE.

" Witness : S. McFADDEN.
" Filed Sept. 7, '60, at 2½ P.M.
" Rec. Sept. 8, '60, at 3 P.M., p. 548, Vol. B, Kinsey's records."

*Exhibit C.*

" GOLD HILL, UTAH TERRITORY, July 20, 1859.

" This is —— show that I, Edward Payne, have this day admitted David B. Cook into the claim north of the Comstock and Co.'s stakes as an equal partner in the six hundred feet of the quartz lead, and known as the Comstock lead, and running north of the Comstock stakes.   And als— give the power to manage that claim to work or let as he D. B. Cook sees fit.

" EDWARD PAYNE.
" JAMES COOK."

*Mr. Harry I. Thornton* and *Mr. H. L. Smoot* for the plaintiff in error.

*Mr. W. E. F. Deal,* contra.

MR. JUSTICE STRONG, after stating the case, delivered the opinion of the court.

Upon the facts found by the Circuit Court it is evident that Taylor, the plaintiff below, was entitled to recover, unless he was barred by the Statute of Limitations. Claiming, as both parties did, under Payne and Cook, the regularity and validity of the location of the mining claim are not in question. And when, in 1862, the plaintiff purchased from one of the owners of the claim an undivided interest therein, and went into possession with his grantor and with others deriving title from the original locators, expending large sums in prospecting and developing it (acts which the State statute declares shall constitute adverse possession), he became a tenant in common with those who were then the owners. He was such when the Union Gold and Silver Mining Company purchased the interest of other owners. By that purchase that company succeeded to a tenancy in common with him, and so did the defendant when it became the purchaser. Although after 1863 the plaintiff did no work personally upon the property, he did not thereby lose the possession he had after his purchase from Wood. The possession of his co-tenants was his possession. They held it for him until he was ousted. That this is a settled rule of law is not denied. And we find nothing in the statutes of Nevada to which we have been referred that is at variance with the rule, even when applicable to mining claims. That it does apply is expressly held in *Van Valkenburg* v. *Huff*, 1 Nev. 142. It follows that neither the defendant nor its grantor had any possession adverse to the plaintiff prior to the time when the ouster was made, and no ouster is found to have been made two years before the suit was brought. The finding that the defendant was in possession more than two years before suit was brought is not a finding of an adverse possession during all that period, such as to constitute a bar under the Statute of Limitations. Such a bar, therefore, does not exist, unless the ouster took place anterior to the commencement of those two years; and as that is a matter of defence, it should appear affirmatively, to be of any avail.

It is, however, useless to enlarge upon this, for the findings show clearly that the defendant has no protection under the

Statutes of Limitations.  The plaintiff was in possession with others who derived their title from the original locators, until the Union Gold and Silver Mining Company, a California corporation, acquired their title, in September, 1863.  After that time the statute could not run against him in favor of that corporation, or its grantee, the defendant, also a foreign corporation.  The Statutes of Limitations of Nevada are held by the Supreme Court of that State to except foreign corporations from their protection.  *Robinson* v. *Imperial Silver Mining Co.*, 5 Nev. 44 ; *Barstow* v. *Union Consolidated Silver Mining Co.*, 10 id. 386.  Hence those statutes cannot be set up by the defendant as a defence in this case ; and as the Circuit Court found as a fact that the plaintiff had been ousted by the defendant from his property, no reason appears why he was not entitled to recover according to the interest which he held prior to the ouster.

It is insisted, however, that, if entitled to recover at all, judgment should have been given for no more than two and a half undivided feet of the mining claim.  This position cannot be maintained.  It is true the original locators claimed six hundred feet extending along the Comstock vein, but of more than three hundred feet they never had an undisputed title, and that three hundred feet lies next to the claim of the Ophir Company on the south.  Indeed, the finding is express, that the Union claim begins at a point fifteen hundred feet north of the claim of the Ophir Company, and extends northward on the Comstock lode three hundred feet, including the ground in dispute.  Of that claim Solomon Wood, the plaintiff's grantor, was the owner of at least fifty feet undivided ; and he sold and conveyed to the plaintiff five undivided feet interest therein, describing the claim as consisting of three hundred feet, bounded on the south by the claim of the Ophir Company.  There can be no doubt, therefore, what was intended to be conveyed.  Plainly, it was five undivided feet of that three hundred, and, therefore, whether the whole claim in fact consisted of three hundred or six hundred feet can make no difference.  Owning, as Wood did, fifty feet undivided, it was in his power to convey, as he did, an undivided interest of five feet in the southern three hundred.

It is objected by the plaintiff in error that the special finding of the court was not sufficiently full and formal to justify any judgment ; that it did not find the essential facts, but left presumptions of fact to be drawn ; that it did not find how Solomon Wood became the owner, or set out in words the conveyances under which the parties claimed. Whether a special finding of facts by the court must have all the requisites of a special verdict, it is not necessary now to assert or deny, for all that is essential to such a verdict is an ascertainment of the ultimate facts. A jury is not to find evidence. We think the ultimate facts were sufficiently found in this case. The ownership of Wood in 1862 was an ultimate fact, and even if Taylor had no other right to the possession than that which he derived from Wood by conveyance, it was not necessary to set forth the chain of conveyances by which Wood became the owner. A transfer of possession is sufficient. They would have been but evidence of Wood's ownership. Besides, a written conveyance is not necessary to the transfer of a mining claim. *Table Mountain Tunnel Co.* v. *Stranahan*, 20 Cal. 198. But Wood was in possession when he sold to Taylor, and Taylor then went into joint possession within. That possession is enough to justify a recovery by him against a disseisor.

The only other assignment of error is the first, and it needs no consideration. Apart from the fact that the defendant claims under Payne and Cook, and is therefore not at liberty to dispute their title, it is impossible to discover how it could have been injured by the reception of Exhibits A and C. The instrument C was certainly sufficient to transfer an interest in the mining claim, and the mining rules, at worst, were only immaterial. The admission of immaterial or irrelevant evidence is no sufficient reason for reversing a judgment, when it is apparent, as in this case, that it cannot have affected the verdict or the finding injuriously to the plaintiff in error.

*Judgment affirmed.*

MR. JUSTICE FIELD did not sit in this case